No. _____

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

IN RE ANADARKO PETROLEUM
CORPORATION SECURITIES LITIGATION

On Petition for Leave to Appeal from the United States District
Court for the Southern District of Texas,
Docket No. 4:20-CV-576.

Honorable Charles R. Eskridge, III

PETITION OF DEFENDANTS PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 23(F) FOR LEAVE TO APPEAL FROM
THE DISTRICT COURT'S CLASS CERTIFICATION ORDER

**Cravath Swaine & Moore LLP**
Kevin J. Orsini
Benjamin Gruenstein
Lauren M. Rosenberg
825 8th Avenue
New York, NY 10019

**Shipley Snell Montgomery LLP**
George T. Shipley
712 Main Street, Suite 1400
Houston, TX 77002

*Counsel for Petitioners*

## CERTIFICATE OF INTERESTED PERSONS

*In re Anadarko Petroleum Corporation Securities Litigation*, No. _____.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.      Plaintiffs-Respondents and Class: All persons or entities that purchased or otherwise acquired Anadarko Petroleum Corporation's publicly traded common stock between February 20, 2015 and May 2, 2017, inclusive, and were damaged thereby; Norfolk County Council as Administering Authority of the Norfolk Pension Fund; Iron Workers Local #580 Joint Funds; Building Trades United Pension Trust Fund.

2.      Counsel for Plaintiffs-Respondents: Robbins Geller Rudman & Dowd LLP, 655 West Broadway, Suite 1900, San Diego, California 92101 (Mark Solomon, Daniel Drosman, Rachel Jensen, Luke Brooks, Hillary Stakem); Kendall Law Group, PLLC, 3811 Turtle Creek Blvd., Suite 1450, Dallas, Texas 75219 (Joe Kendall).

3.      Defendants-Petitioners: Anadarko Petroleum Corporation, an indirect wholly owned subsidiary of Occidental Petroleum Corporation;

R.A. Walker; Robert G. Gwin; Robert P. Daniels; Ernest A. Leyendecker, III.

4.    Counsel for Defendants-Petitioners:  Cravath, Swaine & Moore LLP, 825 Eighth Avenue, New York, New York 10019 (Kevin Orsini, Benjamin Gruenstein, Lauren Rosenberg); Shipley Snell Montgomery LLP, 712 Main Street, Suite 1400, Houston, Texas 77002 (George Shipley).

5.    Other Entities:  Insurers of Defendants-Petitioners (National Union Fire Insurance Company of Pittsburgh, Pa., XL Specialty Insurance Company, Zurich American Insurance Company, U.S. Specialty Insurance Company, ACE American Insurance Company, American International Reinsurance Company, LTD., Freedom Specialty Insurance Company, RSUI Indemnity Company, Navigators Insurance Company, AXIS Insurance Company, QBE Insurance Corporation, Continental Casualty Company, Berkley Insurance Company, Beazley Insurance Company, Westchester Fire Insurance Company, Illinois National Insurance Company); Occidental Petroleum Corporation, a publicly held corporation that has no parent corporation.  Berkshire Hathaway Inc. indirectly owns 10% or more of the issued and outstanding shares of common stock of Occidental Petroleum Corporation.  No other publicly traded company owns more than 10% of the common stock of Occidental Petroleum Corporation.

Dated:        July 14, 2023

*/s/ Kevin J. Orsini*
Kevin J. Orsini

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .............................................................................v

PRELIMINARY STATEMENT ....................................................................1

QUESTIONS PRESENTED...........................................................................4

STATEMENT OF THE CASE .......................................................................4

    1.    Relevant Facts ...........................................................................4

    2.    Relevant Procedural History ......................................................7

LEGAL STANDARD.................................................................................. 14

ARGUMENT .............................................................................................. 15

I.    Review Is Appropriate Because the District Court Refused To
Consider "All Probative Evidence" on the Question of Class
Certification. ...................................................................................... 15

    A.    A District Court Should Not Certify a Class By Relying
on New Evidence Raised in Plaintiffs' Reply Without
Allowing Defendants an Opportunity To Address the
Evidence. ................................................................................ 15

    B.    The District Court Erred by Refusing To Consider
Defendants' Rebuttal to Plaintiffs' New Arguments and
Evidence. ................................................................................ 19

II.    Review is Appropriate Because the District Court Certified a
Class Even Though the "Probative Evidence" Establishes No
Loss Causation.................................................................................. 24

CONCLUSION............................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atl. Specialty Ins. Co. v. Digit Dirt Worx, Inc.*,
  793 F. App'x 896 (11th Cir. 2019) ............................................................5

*Austin v. Kroger Tex., L.P.*,
  864 F.3d 326 (5th Cir. 2017) .................................................................... 22

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)....................................................................................6

*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005) .................................................................... 14

*Chavez v. Plan Benefit Servs., Inc.*,
  957 F.3d 542 (5th Cir. 2020) .................................................................... 16

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)..................................................................................... 16

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)....................................................................................9

*Edgar v. Anadarko Petroleum Corp.*,
  No. 4:17-cv-1372 (S.D. Tex. May 3, 2017) ............................................ 25

*Ferris v. Wynn Resorts Ltd.*,
  No. 2:18-cv-00479 (D. Nev. Jan. 13, 2023) ..............................................7

*Fonda v. Retting*,
  No. 17-1372, 2022 WL 3703181 (S.D. Tex. Feb. 28, 2022) .................. 22

*Goldman Sachs Grp. v. Ark. Tchr. Ret. Sys.*,
  141 S. Ct. 1951 (2021)....................................................................... passim

*Halliburton Co. v. Erica P. John Fund, Inc. (Halliburton II)*,
  573 U.S. 258 (2014)............................................................ 17, 20, 21, 24

*In re BP p.l.c. Sec. Litig.*,
  No. 10-MD-2185 (S.D. Tex. Dec. 6, 2013)............................................ 18

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    289 F.3d 98 (D.C. Cir. 2002) ................................................................... 14

*Lienhart v. Dryvit Sys., Inc.*,
    255 F.3d 138 (4th Cir. 2001) ................................................................... 14

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001), *as amended* (Oct. 16, 2001) ...................... 14

*Peteet v. Dow Chem. Co.*,
    868 F.2d 1428 (5th Cir. 1989) ............................................................ 2, 15

*Prado-Steiman ex rel. Prado v. Bush*,
    221 F.3d 1266 (11th Cir. 2000) ............................................................... 14

*Prantil v. Arkema Inc.*,
    986 F.3d 570 (5th Cir. 2021) ................................................................... 16

*RedHawk Holdings Corp. v. Schreiber Tr. of Schreiber Living Tr.-*
    *DTD 2/8/95*,
    836 F. App'x 232 (5th Cir. 2020) ........................................... 2, 15, 19, 22

*Regents of Univ. of Cal. v. Credit Suisse First Boston (USA) Inc.*,
    482 F.3d 372 (5th Cir. 2007) ................................................................... 14

*St. Clair Cnty. Employees' Ret. Sys. v. Acadia Healthcare Co.*,
    No. 3:18-CV-00988, 2022 WL 4598044 (M.D. Tenn. Sept. 30,
    2022) ....................................................................................................... 18

*United States v. Birdsell*,
    775 F.2d 645 (5th Cir. 1985) ................................................................... 20

*Vallario v. Vandehey*,
    554 F.3d 1259 (10th Cir. 2009) ............................................................... 14

## Statutes & Rules

Fed. R. App. P. 5 ................................................................................................ 1

Fed. R. Civ. P. 23 ....................................................................... 1, 14, 16, 26

Fed. R. Evid. 702 ............................................................................................. 9

Pursuant to Federal Rule of Civil Procedure 23(f) and Federal Rule of Appellate Procedure 5, Defendants Anadarko Petroleum Corporation ("Anadarko"), R.A. Walker, Robert G. Gwin, Robert P. Daniels, and Ernest A. Leyendecker, III, respectfully petition for leave to appeal the District Court's class certification order in *In re: Anadarko Petroleum Corporation Securities Litigation*, 4:20-cv-00576 (S.D. Tex.). This petition is brought within 14 days of entry of a final order on class certification, as required by Rule 23(f).

## PRELIMINARY STATEMENT

This case concerns a key procedural issue that is particularly acute in securities class actions: whether a district court can certify a class based on expert analysis that a plaintiff first presents in its class certification reply brief while refusing to allow the defendant to respond to that new evidence. This can occur (as it did here) when a plaintiff invokes the *Basic* presumption of class-wide reliance in support of class certification, thereby shifting the burden to the defendant to show the alleged misstatements did not impact the price of the securities. If (as here) the defendant meets that burden, a plaintiff may try to submit new price impact evidence on reply, at which point, under a typical briefing schedule, the defendant typically does not have a chance to respond.

The Supreme Court recently held that in deciding whether the *Basic* presumption has been rebutted, a district court must consider "all probative evidence." *Goldman Sachs Grp. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1960 (2021) (citation omitted).  And this Court has repeatedly recognized that neither it nor district courts will "review arguments raised for the first time in [a] reply brief." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1437 (5th Cir. 1989) (citation omitted); *see also RedHawk Holdings Corp. v. Schreiber Tr. of Schreiber Living Tr.-DTD 2/8/95*, 836 F. App'x 232, 237 (5th Cir. 2020) (concluding the district court abused its discretion in relying on new evidence in reply after refusing leave to file a sur-reply).  Taken together, these holdings require a district court to allow defendants to respond to new evidence that plaintiffs present for the first time in reply if the court relies on that evidence in certifying a class.

The District Court below did just the opposite.  It first denied Defendants' request for a sur-reply.  When Defendants then filed a *Daubert* motion to exclude the new report as unreliable, the District Court acknowledged that Plaintiffs' new expert analyses were "certainly [not] immune from criticism" (ECF 141 at 4), yet refused to consider Defendants' criticisms of those analyses in arriving at its class certification decision.  It then relied on that new—and flawed—evidence to certify the class,

2

abdicating its responsibility to consider all probative evidence under

*Goldman* and denying Defendants the appropriate opportunity to respond to

new arguments presented on reply.  (*See* Section I.)

When the full record is considered, the evidence demonstrates that the

alleged misstatements had no price impact because Anadarko's stock drop

was entirely the result of an unrelated catastrophic event, and the class was

improperly certified.  (*See* Section II.)

This Court should grant leave for Defendants to appeal the District

Court's class certification decision ("Order").[1]

---

[1] The Order is attached as Exhibit A and the order on reconsideration is attached as Exhibit B.

## QUESTIONS PRESENTED

1. Whether this Court should grant review of the Order to clarify that a district court cannot certify a class based on evidence and arguments plaintiffs submit for the first time in their class certification reply brief while refusing to allow defendants an opportunity to respond in a sur-reply and refusing to otherwise consider contrary arguments properly presented to the court?

2. Whether this Court should grant review of the Order based on the District Court's manifest error in certifying a class where Defendants demonstrated that Anadarko's stock price decline was caused by a separate event and Defendants clearly rebutted Plaintiffs' price impact analysis, which was factually flawed?

## STATEMENT OF THE CASE

**1.    Relevant Facts**

This putative class action securities fraud lawsuit involves Shenandoah, a deepwater oil field in the Gulf of Mexico.  From approximately 2008 to 2017, Anadarko partnered with other oil and gas companies (including ConocoPhillips and Cobalt International Energy) to determine whether Shenandoah could be commercially developed.  The partners drilled a total of six wells:  a discovery well ("Shen-1"), which proved there was oil, and five appraisal wells ("Shen-2" through "Shen-6").

4

Anadarko was the operator, responsible for planning and conducting drilling operations, but each of the partners decided independently whether to drill each well and shared the associated costs.

Shen-2 encountered over 1,000 feet of oil, making it one of the largest discoveries in the Gulf of Mexico. (ECF 180-1 at 5-6.) Subsequent appraisal wells produced mixed results. As Anadarko told the public, and its internal documents confirm, whether to develop Shenandoah depended on the results of Shen-5 and Shen-6. (*See id.* at 11-14.) While Shen-5 encountered over 1,000 feet of oil, Shen-6 did not encounter oil. (*Id.* at 11-13.)

On May 2, 2017, before markets opened, ConocoPhillips announced Shen-6 did not encounter oil. (ECF 93-1, Ex.A ¶55.) None of the three publicly traded partners (Anadarko, ConocoPhillips or Cobalt) saw a statistically significant stock price decline. After markets closed that afternoon, at 4:16 p.m., Anadarko issued a quarterly report and press release disclosing that: (1) Shen-6 did not encounter oil; (2) Anadarko was suspending appraisal activity at Shenandoah; and (3) Anadarko was taking a $920 million write-down in connection with Shenandoah, which included $435 million in previously suspended costs and a $467 million impairment

on the unproved property balance (the "May 2 Disclosure"). (*See* ECF 180-16, Ex.118 at 13.)

It is undisputed that this was not the only Anadarko-related news that broke after market close that day. As early as 4:03 p.m., the media reported on a press conference held by Colorado investigators naming Anadarko as the cause of a fatal home explosion in Firestone, Colorado. (*See* ECF 111-1, Ex.A at 5 n.16.) Anadarko shut down 3,000 wells as a result of the explosion. Later that afternoon, Colorado's governor ordered all oil and gas companies statewide to inspect and pressure-test all oil and gas flowlines within 1,000 feet of occupied buildings, further extending Anadarko's well shutdown and leading to significant regulatory uncertainty. (ECF 93-1, Ex.A ¶14 n.23.) Anadarko, then the largest oil and gas operator in Colorado, issued a press release that evening committing to cooperate fully with regulators. (*Id.* ¶14.)

The next day, May 3, Anadarko's stock price dropped over 7%. Analysts recognized the significant impact the Firestone news had on Anadarko's stock. One noted that "[t]he findings of the Firestone investigation are a clear negative for Anadarko" and that "Colorado is already one of the most stringently regulated states in the nation in respect to energy and is likely to see increased pressure following this incident." (*Id.*

6

¶14.)  Another estimated Anadarko could incur remediation costs of
$140 million, and at least two brokerages downgraded Anadarko's rating.
(*Id.* at ¶¶64-65.)  The stocks of four other oil and gas companies with
meaningful Colorado operations also experienced statistically significant
price declines that day.  (*Id.* ¶65.)

ConocoPhillips, which did not have significant operations in
Colorado, did not experience a statistically significant price decline.
(ECF 93 at 10-11, 14-15.)  This confirms Anadarko's May 3 price decline
was due to the unrelated Firestone disclosures, not the Shenandoah-related
news.  On May 5, ConocoPhillips revised its earnings report to account for
the suspension of Shenandoah and again did not see a statistically significant
decline.  (*Id.* at 12.)

## 2.    Relevant Procedural History

In February 2020, Plaintiffs filed this lawsuit alleging that Defendants
made false or misleading statements regarding Shenandoah's commercial
viability that inflated Anadarko's stock price until the May 2 Disclosure (the
alleged corrective disclosure).

On October 1, 2021, Plaintiffs moved for class certification, invoking
the *Basic* presumption and relying on an expert report by Bjorn Steinholt

that opined that Anadarko's stock traded in an efficient market.  (ECF 86; ECF 86-1, Ex.A.)

Defendants opposed that motion and submitted an expert report from Dr. Allen Ferrell.  Defendants did not contest that the market for Anadarko stock, during market hours, was efficient.  However, Defendants showed that the Firestone news—not Anadarko's May 2 Disclosure—caused Anadarko's stock price decline, thus rebutting the *Basic* presumption. Dr. Ferrell's report contained an event study showing that ConocoPhillips, with a nearly identical stake in Shenandoah to Anadarko, did not experience a statistically significant price decline after it disclosed that Shen-6 did not encounter oil or after Anadarko announced the suspension of appraisal activities.  If the May 2 Disclosure had impacted Anadarko's stock because it had shown Shenandoah would not be developed, it necessarily would have impacted ConocoPhillips' stock.  It did not.  Analyst coverage supported that Anadarko's May 3 stock drop was caused by the Firestone news. (ECF 93-1, Ex.A ¶¶14, 67.)

Plaintiffs then filed their reply, with a new report from Steinholt containing two new analyses.  (ECF 96; ECF 96-1, Ex.A.)  The first assessed after-market trading—which had not previously been analyzed by either expert.  (ECF 96-1, Ex.A ¶38.)  Steinholt claimed that Anadarko's stock

8

dropped in after-hours trading after Anadarko issued its earnings results but before the Firestone news.  (*Id.*)  The second was a new event study purporting to control for Firestone by including a Colorado "peer group." (*Id.* ¶¶42-46.)  Steinholt also argued that the magnitude of Anadarko's May 2 Disclosure was determinative of price impact, viewing the write-down of approximately $900 million as emblematic of lost value.  (*Id.* ¶8; ECF 96 at 4-5.)

Defendants moved for leave to file a sur-reply to show that Steinholt's new after-market analysis was invalid given the low trading volume after-hours and was based on an incorrect timeline of when different information was made public, and that his new event study employed a flawed methodology.  Even though Steinholt's reply was based on novel analyses not previously disclosed, the District Court denied Defendants' leave to file the motion, holding that "class certification [would] rise or fall with what is fairly briefed in the papers under the Local Rules of the Southern District of Texas."  (ECF 110 at 2.)

Defendants then moved to exclude Steinholt's new analyses under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702, on the basis that they were methodologically unsound and, thus, unreliable.  (ECF 111.)  Supported by an expert report

from Dr. Ferrell, Defendants made three principal arguments. *First*, Steinholt's analysis of after-market trading was unreliable as Steinholt made no attempt to show Anadarko's stock traded efficiently after market hours. (ECF 111-1, Ex.A ¶4.) Moreover, contrary to Steinholt's timeline, the Firestone news was disseminated as early as 4:03 p.m.—*before* Anadarko's May 2 Disclosure at 4:16 p.m., *not after* as Steinholt opined. (*Id.* ¶6 & n.16.) *Second*, Steinholt's new event study purporting to control for Firestone was unreliable because it did not employ the industry index Steinholt used in his market efficiency analysis. (ECF 111 at 14.) Steinholt provided no explanation for this change in methodology. When Dr. Ferrell used Steinholt's prior industry index, the results showed that Anadarko's stock drop after the Firestone explosion remained statistically significant, contradicting Plaintiffs' argument that Steinholt's new model "controlled" for Firestone. (*Id.*) Moreover, the record shows that the Firestone news affected Anadarko differently than other Colorado operators. Anadarko was both the largest oil and gas operator in Colorado at the time and directly linked to the Firestone explosion. (ECF 93-1, Ex.A ¶14; ECF 111-1, Ex.A ¶10 n.26.) *Third*, Steinholt's opinion that the Shenandoah write-down would "logically" have some impact on Anadarko's price was unreliable because the costs associated with the write-down were sunk costs that would

not affect the stock price, as opposed to future cash flows.  (ECF 111 at 15.)

The May 2 Disclosure's lack of impact on ConocoPhillips demonstrated that

Anadarko's stock decline was unrelated to Shenandoah.

On September 28, 2022, the District Court denied Defendants'

*Daubert* motion and granted class certification.  The Court deemed

Defendants' *Daubert* motion "little more than an attempt to re-urge

Defendants' recently denied motion for leave to file a surreply."  (Order at

4.)  It denied the *Daubert* motion after concluding primarily that Steinholt

had adequate credentials as an economist.  (*Id.*)  Then, in analyzing whether

the class should be certified, the Court failed to engage with the substance of

Defendants' criticisms of Steinholt's new analyses even though it noted that

these new analyses were "certainly [not] immune from criticism."  (*Id.*)  The

District Court then certified the class, finding that Defendants had not

rebutted the *Basic* presumption.  (*Id.* at 8-11.)  In doing so, it suggested

ConocoPhillips' and Anadarko's May 2 disclosures were different, with

ConocoPhillips disclosing a $101 million expense for Shen-6 only.  The

District Court termed this ConocoPhillips' entire "stake" in the project,

saying it "paled in comparison to the $902 million stake held by Anadarko."

(*Id.* at 10.)  It further noted that "other Shen development partners," referring

to Cobalt, had "major price drops."  (*Id.*)  Finally, it explicitly relied on

Steinholt's new event study and analysis of after-market trading in rejecting

Defendants' argument that the Firestone news caused the drop. (*Id.* at 10-

11.)

On October 12, 2022, Defendants moved for reconsideration of the

Order, identifying several errors. (ECF 143.) The District Court erred in

dismissing the lack of price impact from ConocoPhillips' May 2 disclosure

about Shen-6, focusing on that single disclosure while ignoring that the

relevant news was fully released across two days and had no price impact on

either day. (*Id.* at 8-9.) Similarly, the District Court erred in concluding that

ConocoPhillips was not a proper comparator on the basis that it and

Anadarko had different "stakes" in the project, when they were in fact nearly

identical. (*Id.* at 9-10.) The District Court instead improperly compared

Anadarko to Cobalt, which had a statistically significant price decline, but

had only 1/189th the market capitalization of Anadarko, was in financial

distress, and was relying on Shenandoah to solve its liquidity problem. (*Id.*

at 10.) Finally, and most importantly, the District Court erred in relying on

Steinholt's unreliable analysis of after-market trading and methodologically

flawed event study for the reasons described in Defendants' *Daubert*

motion—criticisms the District Court did not engage with in granting class

certification. (*Id.* at 10-12.)

12

On June 30, 2023, the District Court denied Defendants' motion for reconsideration, emphasizing that many of Defendants' arguments "derive from information presented in the *Daubert* briefing, with express determination that such would not be properly considered." (ECF 198.) The Court thus confirmed that in certifying the class, it did not—and would not—consider evidence and arguments presented in Defendants' *Daubert* briefing in response to the novel evidence and arguments Plaintiffs presented for the first time on reply. Rather, the District Court addressed only two arguments and rejected them. It rejected Defendants' argument that Cobalt was not an appropriate comparator for the additional reason that it believed Defendants mentioned Cobalt only in a footnote in their opposition to class certification, in violation of the Court's individual rules. (*Id*. at 2-3.) It also "clarifi[ed]" that ConocoPhillips was not a proper comparator because ConocoPhillips' $101 million Shen-6 expense was 0.2% of its market capitalization, whereas Anadarko's $902 million write-down was 2.9% of its market capitalization. (*Id*. at 3.)

This petition followed. Defendants ask this Court to certify their Rule 23(f) appeal as to the District Court's finding of predominance under Rule 23(b)(3) with respect to the element of reliance.

**LEGAL STANDARD**

A court of appeals has "unfettered discretion" to permit an appeal

from an order granting or denying class-action certification under Rule 23.

Fed. R. Civ. P. 23(f) Advisory Committee Note. "[I]t is appropriate to grant

leave to appeal . . . where (1) a 'certification decision turns on a novel or

unsettled question of law' or (2) '[a]n order granting certification . . . may

force a defendant to settle rather than incur the costs of defending a class

action and run the risk of potentially ruinous liability.'" *Regents of Univ. of

Cal. v. Credit Suisse First Boston (USA) Inc.*, 482 F.3d 372, 379 (5th Cir.

2007) (citation omitted). As several other Circuits have recognized,

interlocutory review is also warranted if a district court's certification

decision was manifestly erroneous. *See Vallario v. Vandehey*, 554 F.3d

1259 (10th Cir. 2009); *Chamberlan v. Ford Motor Co.*, 402 F.3d 952

(9th Cir. 2005); *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98

(D.C. Cir. 2002); *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138 (4th Cir. 2001);

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154

(3d Cir. 2001), *as amended* (Oct. 16, 2001); *Prado-Steiman ex rel. Prado v.

Bush*, 221 F.3d 1266 (11th Cir. 2000).

# ARGUMENT

## I.    Review Is Appropriate Because the District Court Refused To Consider "All Probative Evidence" on the Question of Class Certification.

### A.    A District Court Should Not Certify a Class By Relying on New Evidence Raised in Plaintiffs' Reply Without Allowing Defendants an Opportunity To Address the Evidence.

This case raises the important question of what evidence a district court must consider when evaluating class certification, particularly in a securities fraud case in which plaintiffs invoke the *Basic* presumption. Where, as here, plaintiffs submit new evidence and arguments on reply, a district court that intends to rely on those new submissions must permit defendants the opportunity to respond and consider *all* probative evidence as a fact-finder at class certification.

As this Court has explained, courts should not rely on evidence or arguments raised for the first time in a reply brief. *Peteet*, 868 F.2d at 1437. Various courts, including this Court in an unpublished decision, have held that a district court abuses its discretion when it decides an issue by relying on new evidence or arguments raised on reply without granting the other party a sur-reply. *RedHawk*, 836 F. App'x at 237; *Atl. Specialty Ins. Co. v. Digit Dirt Worx, Inc.*, 793 F. App'x 896, 902 (11th Cir. 2019).

The Supreme Court has admonished that "at class certification, courts should be open to *all* probative evidence on that question—qualitative as

15

well as quantitative—aided by a good dose of common sense." *Goldman*, 141 S. Ct. at 1960 (citation and internal quotation marks omitted). This includes, as necessary, "inquiry into the merits." *Id.* at 1961 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)); *see also Prantil v. Arkema Inc.*, 986 F.3d 570, 574 (5th Cir. 2021) (holding that district court "must rigorously analyze Rule 23's prerequisites"). That is because class certification is often outcome-determinative, and as this Court has emphasized, "[i]t is no secret that certification 'can coerce a defendant into settling on highly disadvantageous terms regardless of the merits of the suit.'" *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 547 (5th Cir. 2020) (citation omitted); *Prantil*, 986 F.3d at 575 ("[C]ertification changes the risks of litigation often in dramatic fashion.").

Here, to fulfill Rule 23(b)(3)'s requirement that "questions of law or fact common to class members predominate," Plaintiffs sought to invoke the presumption of class-wide reliance under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). "To invoke the *Basic* presumption, a plaintiff must prove: (1) that the alleged misrepresentation was publicly known; (2) that it was material; (3) that the stock traded in an efficient market; and (4) that the plaintiff traded the stock between the time the misrepresentation was made and when the truth was revealed." *Goldman*, 141 S. Ct. at 1958 (citation

16

omitted).  A defendant can rebut the *Basic* presumption by showing "that an alleged misrepresentation did not actually affect the market price of the stock." *Id.* at 1959 (quoting *Halliburton Co. v. Erica P. John Fund, Inc.* (*Halliburton II*), 573 U.S. 258, 284 (2014)).  Absent price impact, "*Basic*'s fundamental premise completely collapses, rendering class certification inappropriate." *Id.* (citation omitted).

As in many other securities cases, Plaintiffs did not address price impact in their opening brief, as it is Defendants' burden to rebut the *Basic* presumption.  Defendants submitted evidence showing lack of price impact in their opposition.  In their reply, Plaintiffs raised new arguments and submitted a new expert report, which exceeded the length of their opening expert report and contained new evidence and analyses.

Because of the burden-shifting framework under *Basic*, this same pattern occurs often in securities cases, with plaintiffs routinely presenting key evidence and arguments on price impact only on reply.  For this reason, district courts in securities cases often permit sur-replies so that the plaintiffs are not permitted a chance to offer new evidence on this key issue without the opportunity for defendants to respond. *E.g.*, Order, *Ferris v. Wynn Resorts Ltd.*, No. 2:18-cv-00479 (D. Nev. Jan. 13, 2023), ECF 278 (granting

leave to file sur-reply after plaintiffs produced expert report on reply);[2] *St. Clair Cnty. Employees' Ret. Sys. v. Acadia Healthcare Co.*, No. 3:18-CV-00988, 2022 WL 4598044, at *1 (M.D. Tenn. Sept. 30, 2022) (same); Order, *In re BP p.l.c. Sec. Litig.*, No. 10-MD-2185 (S.D. Tex. Dec. 6, 2013), ECF 687 (same).[3]

As discussed further below, the District Court refused to grant Defendants that same right to respond and rebut Plaintiffs' new expert analyses and arguments. To give effect to *Goldman* and this Court's decisions admonishing courts not to rely on arguments and evidence presented for the first time on reply, Defendants submit that this Court should grant certification and confirm that a district court must give a defendant the opportunity to respond to new evidence presented in a plaintiff's reply—and must actually consider the substance of that response—if the district court intends to rely on that evidence in deciding class certification.

---

[2] Attached hereto as Exhibit C.

[3] Attached hereto as Exhibit D.

B.      The District Court Erred by Refusing To Consider Defendants'
        Rebuttal to Plaintiffs' New Arguments and Evidence.

The District Court abdicated its responsibility to rigorously examine

all probative evidence at class certification.  For the first time on reply,

Plaintiffs introduced two new analyses by Steinholt—an event study

purporting to control for the impact of the Firestone news and an analysis of

after-market trading.  Steinholt conceded they were new, as he "did not

perform a price impact analysis" in his opening report.  (ECF 96-1, Ex.A

¶14.)  Steinholt also rendered new opinions, including that the magnitude of

Anadarko's write-down would "logically" impact Anadarko's stock, without

providing a reasoned basis for how an accounting determination about sunk

costs would impact the value of the stock.  The District Court explicitly

relied on these analyses offered for the first time on reply to certify the class.

(Order at 10-11.)

But before doing so, the District Court twice refused to evaluate

Defendants' response to the new analyses and Plaintiffs' related arguments.

*First*, the District Court did not allow a sur-reply, faulting Defendants for

not submitting an event study on price impact in their opposition.  (ECF

110.)  But Defendants *did* submit an event study with their opposition that

demonstrated the absence of price impact.  (ECF 93-1, Ex.A ¶¶ 34-35 &

tbl.1.)  What Defendants did not do—and could not have done—was rebut in

19

*opposition* the new expert analyses that Plaintiffs first presented on *reply*. *See RedHawk*, 836 F. App'x at 237 ("[T]he purpose of a response brief is to respond to the arguments made by the opposing party in its opening brief, not to rebut new arguments that party could conceivably make in its reply."); *see also United States v. Birdsell*, 775 F.2d 645, 655 n.4 (5th Cir. 1985) (noting that "[b]ecause the government ha[d] not had an opportunity to respond" to appellant's argument raised for the first time on reply, this Court would not "address the issue").

*Second*, in certifying the class, the District Court refused to consider facts and arguments raised in Defendants' *Daubert* motion and accompanying expert report. Although Defendants had a right to file their *Daubert* motion, the District Court dismissed it as "little more than an attempt to re-urge Defendants' recently denied motion for leave to file a surreply." (Order at 4.) Although it denied the *Daubert* motion, the District Court specifically acknowledged that Steinholt's "new event study certainly won't be immune from criticism." (*Id.*) Indeed, the District Court had that criticism before it, in Defendants' *Daubert* motion and Dr. Ferrell's supporting report. Yet rather than engage with those criticisms at the class certification stage—as the District Court was required to do—it deferred Defendants' criticism of Plaintiffs' new analyses for trial. This is directly

inconsistent with Supreme Court precedent, which explains that price impact is part of *Basic*'s "fundamental premise" and has "everything to do with the issue of predominance at the class certification stage." *Halliburton II*, 573 U.S. at 283.  Accordingly, "defendants must be afforded an opportunity *before class certification* to defeat the presumption through evidence that an alleged misrepresentation did not actually affect the market price of the stock." *Id.* at 284 (emphasis added).  It is the district court's obligation to "consider[] *all* evidence relevant to price impact," even if that evidence "is also relevant to a merits question." *Goldman*, 141 S. Ct. at 1961 (citing *Halliburton II*, 573 U.S. at 284).

In short, the District Court failed to satisfy its fact-finding role and certified the class based on incomplete and incorrect evidence.  As Defendants pointed out in the materials that the District Court refused to consider, Steinholt's after-market analysis that the Court relied on to certify the class was based on an incorrect timing of events—the Firestone news came out *before* the alleged corrective disclosure.  Steinholt's analysis was also flawed because it assumed that the after-market was efficient, but never established after-market efficiency.  (ECF 111-1, Ex.A ¶4, 6 & n.16.)  Indeed, Steinholt has since conceded that he never analyzed whether after-market trading was efficient.  (Steinholt Dep. Tr. (Dec. 21, 2022)

129:23-133:16.)  And, with respect to Steinholt's new analysis on reply purporting to control for the Firestone news, the District Court ignored that Dr. Ferrell had shown this study did *not* control for the Firestone news—another criticism to which Plaintiffs have never offered a response.  All of these criticisms were explained in Defendants' *Daubert* materials that the Court refused to consider in deciding class certification.

The District Court had one final opportunity to address these issues when Defendants moved for reconsideration, but again explicitly refused to consider any arguments or evidence that Defendants offered in response to Plaintiffs' evidence and arguments on reply.  Although a district court can reconsider its class certification decision "for any reason [it] deems sufficient," *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017), including "to correct manifest errors of . . . fact," *Fonda v. Retting*, No. 17-1372, 2022 WL 3703181, at *1 (S.D. Tex. Feb. 28, 2022) (citation omitted), the District Court dismissed most of Defendants' arguments because they "derive[d] from information presented in the *Daubert* briefing, *with express determination that such would not be properly considered.  And as such, they will not be considered here*."  (ECF 198 at 2 (emphasis added).)  The District Court additionally rejected Defendants' argument that Cobalt was not a proper comparator because Defendants mentioned Cobalt

only in a footnote in their opposition. But Plaintiffs did not argue Cobalt was relevant until their reply, and Defendants could not have responded to an argument that was not yet made. *See RedHawk*, 836 F. App'x at 237. Moreover, while the District Court purported to clarify that ConocoPhillips was not a proper comparator because Anadarko and ConocoPhillips had different "stakes," it continued to focus on the improper comparison of ConocoPhillips' Shen-6 expense (this time as a percentage of its market capitalization) with Anadarko's total write-down (as a percentage of its market capitalization). This again misses the critical issue: If the news that discontinuing the Shenandoah project had actually had a price impact on Anadarko's stock, it would have impacted ConocoPhillips' stock price as well. But it did not, and the District Court has never explained how this can be consistent with a finding of class-wide reliance. To the contrary, as discussed below, this shows the Firestone news—not the Shenandoah disclosures—caused Anadarko's stock drop.

Accordingly, Defendants submit that the District Court erred by relying on evidence first presented on reply to certify the class while simultaneously refusing to consider evidence offered by Defendants in response. Given that this is a recurring issue, particularly in securities litigations in light of the *Basic* burden-shifting framework, the Court should

23

confirm that defendants must be given a chance to respond to new evidence and arguments offered on reply if the Court intends to rely on those materials to certify a class.

## II.    Review is Appropriate Because the District Court Certified a Class Even Though the "Probative Evidence" Establishes No Loss Causation.

As discussed above, it is well settled that Defendants may rebut the *Basic* presumption by showing the alleged misstatements had no impact on Anadarko's stock price. *Goldman*, 141 S. Ct. at 1958. If Defendants make that showing, the link between those statements and the price paid by the plaintiff is severed, the presumption of reliance is rebutted and "class certification [is] inappropriate." *Id*. at 1959 (citation omitted). The presumption may be rebutted by "*any* showing that severs the link," "including evidence that the asserted misrepresentation *(or its correction)* did not affect the market price of the defendant's stock." *Halliburton II*, 573 U.S. at 280-81 (emphases added) (citation omitted). Importantly, in assessing price impact, the court must be open to "*all* probative evidence on [price impact]—qualitative as well as quantitative—aided by a good dose of common sense." *Goldman*, 141 S. Ct. at 1960 (citation omitted). The District Court here certified a class even though the probative evidence

demonstrated a lack of price impact; this was reversible error that should be addressed now.

In particular, the evidence here shows that the Firestone news—not Anadarko's Shenandoah disclosures—caused Anadarko's stock to decline. The Firestone incident was tragic.  A home exploded, killing two people and injuring another.  On May 2, Anadarko was identified as the cause of this explosion, and Colorado's governor mandated enhanced regulatory scrutiny. (ECF 93-1, Ex.A ¶14 n.23.)  The Firestone news made national headlines, and analysts linked it to Anadarko's stock drop, recognizing that the shutdown, time and expense associated with future remediation efforts and regulatory uncertainty had a disastrous impact on Anadarko's stock.  (*E.g.*, *id.* ¶64.)  At least two brokerages downgraded Anadarko.  (*Id.*)  Indeed, a separate securities lawsuit was filed against Anadarko related to the May 2 Firestone news, seeking damages associated with the exact stock decline at issue here.  *Edgar v. Anadarko Petroleum Corp.*, No. 4:17-cv-1372 (S.D. Tex. May 3, 2017).

That Firestone, not Shenandoah, caused Anadarko's stock drop is supported by the fact that ConocoPhillips—with a nearly identical interest in Shenandoah as Anadarko—did not experience a statistically significant price drop.  It is unsurprising the Shenandoah news did not impact Anadarko's

stock, as Shenandoah was a risky project to which some analysts assigned "low to zero" value throughout the class period.  (ECF 96-1, Ex.A ¶69.)

In sum, had the District Court properly considered Defendants' evidence, it would have concluded that Anadarko's announcement about Shenandoah did not cause Anadarko's stock drop on May 3, 2017.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request leave under Rule 23(f) of the Federal Rules of Civil Procedure to appeal the District Court's order granting class certification.

Dated:  July 14, 2023

Respectfully submitted,

*/s/ Kevin J. Orsini*

**CRAVATH, SWAINE & MOORE LLP**
Kevin J. Orsini
Benjamin Gruenstein
Lauren Rosenberg
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
korsini@cravath.com
bgruenstein@cravath.com
lrosenberg@cravath.com

**SHIPLEY SNELL MONTGOMERY LLP**
George T. Shipley
State Bar No. 18267100
Federal ID No. 02118
712 Main Street, Suite 1400
Houston, TX 77002
Telephone: (713) 652-5920
Facsimile: (713) 652-3057
gshipley@shipleysnell.com

*Counsel for Defendants-Petitioners*

# CERTIFICATION OF COMPLIANCE

I hereby certify that this document complies with Federal Rule of Appellate Procedure 5(c) and 32(g) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 5, this document contains 5,194 words. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Version 2208 in Times New Roman size 14.

Dated:  July 14, 2023

/s/ Kevin J. Orsini
Kevin J. Orsini
*Counsel for Defendants-Petitioners*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the Court's CM/ECF on July 14, 2023.  I further certify that, pursuant to Federal Rule of Appellate Procedure 25(c)(2)(B), a copy of the foregoing was served on July 14, 2023 via email on the following counsel for Plaintiffs, who consented to such service in writing.

Mark Solomon
Daniel Drosman
Rachel Jensen
Luke Brooks
Hillary Stakem
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, California 92101
(619) 231-1058
marks@rgrdlaw.com
dand@rgrdlaw.com
rjensen@rgrdlaw.com
lukeb@rgrdlaw.com
hstakem@rgrdlaw.com

Joe Kendall
KENDALL LAW GROUP, PLLC
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
(214) 744-3000
jkendall@kendalllawgroup.com

*Counsel for Plaintiffs-Respondents*

Dated:  July 14, 2023

*/s/ Kevin J. Orsini*
Kevin J. Orsini
*Counsel for Defendants-Petitioners*

# Exhibit A

United States District Court
Southern District of Texas

**ENTERED**

September 28, 2022

Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | CIVIL ACTION NO |
| | § | 4:20-cv-00576 |
| | § | |
| | § | |
| IN RE: ANADARKO | § | JUDGE CHARLES ESKRIDGE |
| PETROLEUM | § | |
| CORPORATION | § | |
| SECURITIES | § | |
| LITIGATION | § | |

### ORDER OF CLASS CERTIFICATION

The motion for class certification by Lead Plaintiff Norfolk County Council as Administering Authority of the Norfolk Pension Fund, Iron Workers Local #580 Joint Funds is granted. Dkt 86.

1. Background§

Defendant Anadarko Petroleum Corporation was a large oil and gas exploration company until it was purchased by Occidental Petroleum Corporation in August 2019. Dkt 55 at ¶ 2. Lead Plaintiff Norfolk County Council and Plaintiff Building Trades United Pension Fund (together *Norfolk County Group*), as well as other putative class members, purchased Anadarko common stock during the dates between February 20, 2015, and May 2, 2017. Dkt 55 at ¶ 15. Those are also dates within which Defendants R.A. Walker, Robert G. Gwin, Robert P. Daniels, and Ernest A. Leyendecker III served as senior Anadarko executives. Dkt 55 at ¶¶ 16–20.

Norfolk County Group alleges that Anadarko and its corporate representatives actively misled investors about the viability and profitability of a deepwater asset in the Gulf of Mexico—the Shenandoah oil field project, known as *Shen*. Dkt 55 at ¶¶ 4–5; Dkt 93 at 8. Norfolk County Group

specifically contends that Defendants recklessly overstated the viability of the project and concealed negative information from investors. Dkt 55 at ¶ 5; see also *Frye v Anadarko Petroleum Corp,* 953 F3d 285, 288 (5th Cir 2019).

Anadarko eventually announced that it was suspending Shen appraisal activity, resulting in $435 million in expensed suspended exploratory well costs and a $467 million impairment. Dkt 86-1 at 26. That announcement came at 4:16 PM, after trading concluded on May 2, 2017. Dkt 86-1 at 25–26; Dkt 93-1 at 12. Within the hour, news also broke regarding Anadarko's involvement in a fatal explosion that occurred on April 17, 2017, in Firestone, Colorado. Dkt 93-1 at 12–13, 15–16. Anadarko stock dropped almost eight percent the next day. Dkt 55 at ¶¶ 152–54; see also Dkt 86-1 at 26.

Georgia Firefighters' Pension Fund filed this putative class action in February 2020 for violations of Sections 10(b) and 20(a) of the Exchange Act. Dkt 1; see 15 USC §§ 78j & 78t. Judge Nancy Atlas appointed Norfolk County Group as lead plaintiff and Robbins Geller Rudman & Dowd LLP as lead counsel. Dkt 41. The case was reassigned to Judge Vanessa D. Gilmore in March 2021 and then to this Court in December 2021. Dkts 66 & 91.

Pending is a motion by Norfolk County Group to certify the following class:

> All persons and entities that purchased or acquired the common stock of Anadarko Petroleum Corporation between February 20, 2015, and May 2, 2017, inclusive (the "Class Period"), and were damaged thereby. Excluded from the Class are Defendants and their families, legal representatives, heirs, successors, or assigns; officers, directors, subsidiaries, and affiliates of Anadarko during the Class Period; any entity in which Defendants have a controlling interest; and any judicial officer to which this litigation is assigned.

2

Dkt 86 at 9–10; see also Dkt 55 at ¶¶ 1, 165–171 (amended class action complaint).

2. Legal standard

Class actions proceed under Rule 23 of the Federal Rules of Civil Procedure. "The class action is an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only." *Comcast Corp v Behrend*, 569 US 27, 33 (2013) (quotation marks and citation omitted). "To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23." Ibid; see also *Madison v Chalmette Refining LLC*, 637 F3d 551, 554 (5th Cir 2011).

Rule 23(a) begins by listing four prerequisites to class certification—*numerosity*, *commonality*, *typicality*, and *adequacy of representation*. Meeting these requirements isn't alone sufficient. Rule 23(b) instead specifies three class types and the requirements for each. The putative class here seeks to proceed under Rule 23(b)(3), which permits class certification where common questions of law or fact predominate over individual questions. See Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 1772, 1775, 1777 (Westlaw 2022).

The reviewing court must "rigorously consider" the Rule 23(a) prerequisites and the requirements specific to the class type under Rule 23(b). *Chavez v Plan Benefit Services Inc*, 957 F3d 542, 546 (5th Cir 2020). This requires a court to look beyond the pleadings to "understand the claims, defenses, relevant facts, and applicable substantive law." *Flecha v Medicredit Inc*, 946 F3d 762, 766 (5th Cir 2020). A court must also consider how any trial on the merits would be conducted if the class was certified. *Prantil v Arkema Inc*, 986 F3d 570, 574 (5th Cir 2021).

3. Analysis

Norfolk County Group asserts that this action satisfies all prerequisites of Rule 23. Dkt 86 at 13. The only aspect challenged by Defendants pertains to *predominance* under Rule 23(b)(3). Even with such concessions, the Fifth Circuit

3

holds that Rule 23 nonetheless "requires the court to 'find,' not merely assume, the facts favoring class certification." *Unger v Amedisys Inc*, 401 F3d 316, 321 (5th Cir 2005). Each requirement is thus addressed in turn.

a. Motion to exclude Steinholt rebuttal report

One evidentiary issue precedes the Rule 23 analysis. Norfolk County Group in support of its motion to certify the class proffers a report and rebuttal report from its expert Bjorn Steinholt. Dkts 86-1 (Steinholt report) & 96-1 at 2–34 (Steinholt rebuttal report). Defendants move to exclude the rebuttal report on *Daubert* grounds. Dkt 111 at 5.

The motion will be denied. As Norfolk Country Group notes, the motion itself is little more than an attempt to re-urge Defendants' recently denied motion for leave to file a surreply. Dkts 113 at 2 (motion to strike) & 118 (response); see also Dkts 97 & 110. It has already been determined that class certification will rise or fall with what is fairly briefed in the papers under the Local Rules of the Southern District. Dkt 110.

Beyond this, Steinholt easily clears the *Daubert* hurdle. He's a chartered financial analyst and has presented evidence regarding market efficiencies and reliance in over twenty federal securities class actions. See Dkt 86-1 at 4–5.

Defendants don't dispute Steinholt's credentials. They instead assert that his rebuttal report—but not his original report—is "rife with methodological errors," particularly as it relates to a new event study that purportedly controls for news regarding the Firestone explosion. Dkt 111 at 5. The new event study certainly won't be immune from criticism. But it's of sufficient reliability and relevance for *Daubert* purposes. See *Ludlow v BP PLC*, 800 F3d 674, 683 n 37 (5th Cir 2015); *SEC v Cuban*, 2013 WL 3809654, *3 (ND Tex). Most important, it reliably highlights the flaws in the report by Allen Ferrell, the expert for Defendants. Dkt 96-1 at 11–30. And it does so even without the new event study.

The Steinholt rebuttal report is thus appropriately considered where pertinent below.

4

b. Rule 23(a) requirements

All prerequisites of Rule 23(a) are satisfied.

*As to numerosity,* a plaintiff must show that "the class is so numerous that joinder of all members is impracticable." FRCP 23(a)(1). In addition to the sheer number of purported class members, a court may consider "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Ibe v Jones*, 836 F3d 516, 528 (5th Cir 2016).

Numerosity "'is generally assumed to have been met' in a class action suit involving nationally traded securities, since the putative class is likely sufficiently numerous, geographically dispersed, and difficult to identify." *Prause v TechnipFMC PLC*, 2020 WL 3549686, *2 (SD Tex), quoting *Zeidman v J. Ray McDermott & Co*, 651 F2d 1030, 1039 (5th Cir 1981). This action falls squarely within that general rule. Anadarko was listed on the New York Stock Exchange for the entire class period with a trading volume of 2.9 billion shares and over 1,800 institutional investors. Dkt 86-1 at 15 & 20. Joinder of all members is plainly impracticable.

*As to commonality,* a plaintiff must show that "there are questions of law or fact common to the class." FRCP 23(a)(2). As the Supreme Court stated in *Wal-Mart Stores Inc v Dukes*, the class members must have a common contention that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 564 US 338, 350 (2011); see also *Ahmad v Old Republic National Title Insurance Co*, 690 F3d 698, 702 (5th Cir 2012). A common instance of the defendant's injurious conduct can establish commonality "even if the amount of damages differs for each injured class member." *Prause,* 2020 WL 3549686 at *3, citing *In re Deepwater Horizon*, 739 F3d 790, 810 (5th Cir 2014).

Whether Defendants made false and misleading statements, what effect those statements had on its stock

5

price, what damages (if any) were sustained by class members—these and others are all common questions capable of classwide resolution within the meaning of *Dukes.* Common evidence will likewise answer these common legal questions. For example, see *Rooney v EZCORP Inc*, 330 FRD 439, 445 (WD Tex) (finding commonality satisfied in securities litigation where multiple questions common to class existed).

*As to typicality,* a plaintiff must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FRCP 23(a)(3). This inquiry "focuses on the similarity between the named plaintiffs legal and remedial theories and the theories of those they purport to represent." *Mullen v Treasure Chest Casino LLC,* 186 F3d 620, 625 (5th Cir 1999) (quotation marks and citation omitted). Plaintiffs can satisfy typicality "by showing that class representatives' claims arise from a similar course of conduct and share the same legal theory." *In re Cobalt International Energy Inc Securities Litigation,* 2017 WL 2608243, *2 (SD Tex).

Norfolk County Group purchased Anadarko stock during the class period. Its allegations of fraudulent conduct and its damages theories are shared by the entire class. See Dkts 26-2, 26-3, 55 & 86-2.

*As to adequacy of representation,* a plaintiff must show that "the representative parties will fairly and adequately protect the interests of the class." FRCP 23(a)(4). Adequacy explores "the zeal and competence" of lead counsel, the "willingness and ability" of the class representative to "take an active role in and control the litigation and to protect the interests of absentees," and the "risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Slade v Progressive Securities Insurance Co,* 856 F3d 408, 412 (5th Cir 2017) (quotation marks and citation omitted).

Here, lead counsel Robbins Geller has served as lead counsel in multiple securities class actions. And it has demonstrated a willingness to take securities fraud actions to trial and has been active in this litigation. See Dkt 86-4

6

(firm resume), listing matters including *In re Enron Corp Securities Derivative & ERISA Litigation*, 586 F Supp 2d 732 (SD Tex 2008). Norfolk County Group is similarly well situated for class representation, being composed of large and sophisticated funds. Dkt 86-2 at 3. Such large institutional investors are the preferred named plaintiffs in securities fraud litigation because they generally have the same interests as the plaintiff class. *In re BP PLC Securities Litigation*, 758 F Supp 3d 428, 439 (SD Tex 2010). The interests of the group are also aligned with other class members, as all seek to maximize recovery stemming from the alleged misconduct by Anadarko and its executives. See Dkt 86-2. And the group has demonstrated "a sufficient level of knowledge and understanding" in this litigation to date. *Prause*, 2020 WL 3549686, at *4, quoting *Ibe*, 836 F3d at 529.

c. Rule 23(b)(3) predominance

Certification under Rule 23(b)(3) requires a finding that "the questions of law or fact common to class members predominate over any questions affecting only individual members." This is known as the *predominance* requirement.

The same analytical principles that govern Rule 23(a) pertain, but "Rule 23(b)(3)'s predominance criterion is even more demanding." *Comcast*, 569 US at 34. A court must identify "the substantive issues that will control the outcome" of the case and assess "which issues will predominate." *Madison v Chalmette Refining LLC*, 637 F3d 551, 555 (5th Cir 2011) (quotation marks and citation omitted). It must therefore consider "how a trial on the merits would be conducted if a class were certified." Ibid (quotation marks and citation omitted). The inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Torres v SGE Management LLC*, 838 F3d 629, 636 (5th Cir 2016, *en banc*) (quotation marks and citation omitted). But of note, this showing doesn't require that the court find that the common questions "will be answered, on the merits, in

favor of the class." *Amgen Inc v Connecticut Retirement Plans & Trust Funds*, 568 US 455, 459 (2013).

Defendants make two contentions in this regard. The first is that Norfolk County Group fails to establish a critical requirement in securities class actions prosecuted under Rule 23(b)(3)—that being reliance on the alleged misstatements. Dkt 93 at 5. The other is that the posited damages theory is too vague to adequately connect to the liability theory. Id at 7 & 26.

Neither point has merit. Plaintiff thus satisfies the predominance requirement of Rule 23(b)(3).

### i. Showing as to reliance

"In securities law cases, predominance often hinges upon whether or not class members will need to individually demonstrate they relied upon a misrepresentation or omission made by the defendant." *Rooney*, 330 FRD at 448, citing *Amgen,* 568 US at 461. Norfolk County Group proposes to satisfy reliance by pointing to the *Affiliated Ute* and *Basic* presumptions. Dkt 86 at 18. While the former isn't applicable, the latter quite clearly is.

To invoke the *Affiliated Ute* presumption, a plaintiff must "allege a case primarily based on omissions or nondisclosure" and "demonstrate that the defendant owed him a duty of disclosure." *In re Enron Corp Securities, Derivative & ERISA Litigation*, 610 F Supp 2d 600, 610 (SD Tex), quoting *Regents of University of California v Credit Suisse First Boston Inc*, 482 F3d 372, 384 (5th Cir 2007). A defendant omits information when it says "absolutely nothing about matters whose very existence plaintiffs have no reason to consider." *In re Enron*, 610 F Supp 2d at 631 n 33.

This action is primarily based upon certain, affirmative representations by Defendants regarding Shen upon which Norfolk County Group and other putative class members purport to have relied. By contrast, the alleged omissions are those that putatively would have served primarily to *clarify* those representations. In other words, the subject

representations are said to be misleading in part *because of* the omissions. And the Fifth Circuit has held that the *Affiliated Ute* presumption doesn't apply to such "true statements that are nonetheless so incomplete as to be misleading." *In re Enron*, 610 F Supp 2d at 631 n 33. As a result, the *Affiliated Ute* presumption isn't applicable.

The *Basic* presumption holds that "a public, material misrepresentation will distort the price of stock traded in an efficient market." *Halliburton Co v Erica P. John Fund Inc (Halliburton II),* 573 US 258, 283–84 (2014); see also *Basic Inc v Levinson*, 458 US 224, 241–42, 247 (1988). An investor thus relies on the misrepresentation "so long as it was reflected in the market price at the time of his transaction." *Goldman Sachs v Arkansas Teacher Retirement System*, 141 S Ct 1951, 1958 (2021) (quotation marks and citation omitted). As the Supreme Court summarized, "The presumption allows class-action plaintiffs to prove reliance through evidence common to the class," which "in turn makes it easier for plaintiffs to establish the predominance requirement" of Rule 23(b)(3). Id at 1958–59.

To invoke this presumption, a plaintiff must prove that (i) "the alleged misrepresentation was publicly known," (ii) "it was material," (iii) "the stock traded in an efficient market," and (iv) "the plaintiff traded the stock between the time the misrepresentation was made and when the truth was revealed." Id at 1958. Defendants can then rebut this presumption by demonstrating that the misstatements *did not* affect the market price of the stock—a point upon which they bear the burden of persuasion. Id at 1959, 1963. "The district court's task is simply to assess all the evidence of price impact—direct and indirect—and determine whether it is more likely than not that the alleged misrepresentations had a price impact." Id at 1963.

Defendants made the alleged misstatements in public SEC filings, and the misstatements concerned a significant asset. See Dkt 55 at ¶¶ 94–141. The statements were thus both public and material. Additionally, Anadarko stock

9

was traded on the New York Stock Exchange, which alone is indicia of market efficiency. See *Strougo v Barclays PLC*, 312 FRD 307, 318 (SDNY 2016). And Anadarko stock meets three further indicia of market efficiency—large market capitalization, narrow bid-ask spread, and large stock float. See Dkt 86-1 at 26–29; *Krogman v Sterritt*, 202 FRD 467, 478 (ND Tex 2001).

Defendants don't actually dispute that Norfolk County Group properly invokes the *Basic* presumption in the first instance. They instead seek to rebut it on the ground that the Shen disclosures didn't impact the Anadarko stock price. Dkt 93 at 9–11.

*First*, they note that ConocoPhillips—the development partner of Anadarko—disclosed similar information about Shen before markets opened on May 2, 2017. And the stock price of neither ConocoPhillips nor Anadarko dropped during that trading day. Dkt 93 at 14–15. But the disclosure by ConocoPhillips on May 2nd was quite limited, being a single sentence noting, "First-quarter earnings were negatively impacted by $101 million of pre-tax dry hole expense, which includes the Shenandoah-6 well in the Gulf of Mexico." Dkt 96-1 at 15. ConocoPhillips didn't disclose the suspension of Shen appraisal activity, it didn't write-down Shen, and it didn't disclose Shen sidetrack well results. Id at 15–18.

*Second*, Defendants observe that ConocoPhillips stock didn't drop after the Shen disclosures by Anadarko, despite ConocoPhillips' $101 million stake in the project. Dkt 93 at 15–16, 10. But ConocoPhillips isn't a proper comparator, given that the Shen project was a minor expenditure relative to its massive market cap. What's more, its $101 million stake paled in comparison to the $902 million stake held by Anadarko. Dkt 96-1 at 15–16. And notably, other Shen development partners with high Shen-stake-to-market-cap ratios suffered major price drops on May 3rd. Id at 22–24.

*Third*, Defendants highlight a potential $140 million in new regulatory costs as a result of the Firestone news. Dkt 93 at 16–18. Be that as it may, the Anadarko stock price

dropped 4.1 percent during after-hours trading between the time Anadarko made its Shen disclosures and the time the Firestone news broke. 96-1 at 27. And the Steinholt event study concluded that the price drop on May 3rd remained statistically significant even when controlling for the Firestone news. Id at 30–32.

The Supreme Court admonishes, "In assessing price impact at class certification, courts should be open to *all* probative evidence on that question—qualitative as well as quantitative—aided by a good dose of common sense." *Goldman Sachs*, 141 S Ct at 1960 (quotation marks omitted). Common sense suggests here that, when news broke on the same day of both an *actual* $900 million write-off as well as a *potential* $140 million in new regulatory costs, an eight percent decline in the company's stock price the following day isn't *solely* attributable to the latter, lesser regulatory costs.

Norfolk Group has adequately invoked the *Basic* presumption, and Defendants haven't met their burden of persuasion to rebut it. Norfolk County Group has established reliance sufficient to satisfy the predominance requirement of Rule 23(b)(3).

ii. Showing as to damages

Norfolk County Group bears the burden of demonstrating that damages may be measured using a common methodology that's consistent with the theory of liability. *Comcast Corp*, 569 US at 35. But damages at the class-certification stage needn't be exact. *Ludlow v BP PLC*, 800 F3d 674, 683 (5th Cir 2015); see also *Story Parchment Co v Paterson Parchment Paper Co*, 282 US 555, 563. Nor must plaintiff prove loss causation as a condition of obtaining class certification. *Ludlow,* 800 F3d at 687, citing *Erica P. John Fund Inc v Halliburton Co (Halliburton I)*, 563 US 804, 813 (2011).

Steinholt in his expert report presents a *stock price inflation* theory (also known as the *out-of-pocket measure*). See Dkt 86-1 at 29–31. "That is, the theory alleges that the stock price was higher than it would have been, and the

damage is the difference between the 'true' price and the 'paid' price." *Ludlow*, 800 F3d at 689. Here, the underlying theory is that the alleged misrepresentations inflated the Anadarko stock price. Steinholt proposes calculating the "true" price—the price the stock would have been absent the alleged misrepresentations—by conducting an event study supplemented by fundamental valuation tools that help control for other influencing factors. The individual damages of each class member can then be calculated based on the difference between the price they paid and the "true" price at the time of their respective purchases and sales. See Dkt 86-1 at 29–31.

Defendants contend that this theory is "so vague and imprecise that it is impossible to assess whether Plaintiffs have presented a damages methodology consistent with their theory of liability." Dkt 93 at 26. But the Fifth Circuit approved a nearly identical theory of damages in *Ludlow v BP PLC*, noting that the damages theory remained "tied to a theory of liability common to all" putative class members. See id at 687. The same is true here. Norfolk County Group contends that Defendants are liable to all putative class members for misstatements regarding the viability of Shen. And the loss forming the basis for its damages model "comes from the inflated stock price caused by those misstatements." See id at 687.

Defendants also attempt to brand the damages theory proposed by Norfolk County Group as a *materialization of the risk* model. Dkt 93 at 27. Under such a theory, "investors are harmed by [ ] corrective events that represent materializations of the risk that was improperly disclosed." *Ludlow*, 800 F3d at 690 (quotation marks and citation omitted, omission in original). The Fifth Circuit has explained that such a model is insufficient because it can't "be applied uniformly across the class, as *Comcast* requires, because it lumps together those who would have bought the stock at the heightened risk with those who would not have. It also presumes substantial reliance on factors other than price, a theory not supported by *Basic*

and the rationale for fraud-on-the-market theory." Id at 691.

But such problems aren't present here. Norfolk County Group doesn't assert that Defendants underrepresented an *unrealized* risk. It instead asserts that certain risks had *in fact* materialized, yet Defendants actively misled investors to the contrary. For example, see Dkt 55 at ¶¶ 6, 98, 116; see also Dkts 63 at 15. These misrepresentations (they say) artificially inflated the Anadarko stock price, and it is *that* artificial inflation that was subsequently removed via a corrective disclosure. The theory thus bears the "hallmarks of the fraud on the market theory of liability." *Rougier v Applied Optoelectronics Inc*, 2019 WL 6111303, *17 (SD Tex). And it stands in stark contrast to the theory rejected in *Ludlow*, where individual investors relied on their own risk assessment as opposed to the integrity of the market price. *In re BP PLC Securities Litigation*, 2014 WL 2112823, *11 (SD Tex), affirmed by *Ludlow*, 800 F3d at 691.

In sum, the intended damages model measures "only the difference between the price paid and the true value of the security at the time of the initial purchase by the defrauded buyer" without the need to inquire into other factors such as individual risk tolerance. *Ludlow*, 800 F3d at 682, 691 (cleaned up). Norfolk County Group has thus satisfied its burden under *Comcast* to demonstrate that its methodology is "sound" and produces a "commonality of damages." *Comcast Corp*, 569 US at 37.

### d. Rule 23(b)(3) superiority

Certification under Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This is known as the *superiority* requirement.

The inquiry is fact specific on factors of (i) "the interests of members of the class in individually controlling the prosecution or defense of separate actions," (ii) "the extent and nature of any litigation concerning the controversy already begun by or against class members,"

(iii) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum", and (iv) "the likely difficulties encountered in managing a class action." *Ibe*, 836 F3d at 529–30, citing *Amgen Products v Windsor*, 521 US 591, 615–16. Courts have routinely found that plaintiffs in securities litigation meet the superiority requirement. For example, see *In re BP PLC Securities Litigation*, 2013 WL 6388408, *18 (SD Tex); *Prause*, 2020 WL 3549686 at *7; *Rooney*, 330 FRD at 451.

Superiority is easily met here. *First*, as is often the case in securities litigation, "the costs and expenses of individual litigation would prove prohibitive for potential class members, who would have little incentive to litigate their claims outside the context of a class action." *Prause*, 2020 WL 3549686 at *7. *Second*, there's no other pending litigation concerning the alleged misconduct of Anadarko and its officials. Dkt 86 at 26. *Third,* concentrating this litigation will promote judicial efficiency, economy, and uniformity by avoiding "the time and expense of requiring all class members to litigate individually." *Rougier*, 2019 WL 6111303 at *19, quoting *In re BP p.l.c. Securities Litigation*, 2013 WL 6388408. *Fourth*, the potential for individualized issues has been adequately addressed above, with no further manageability issues either noted by the parties or readily ascertainable.

The superiority requirement of Rule 23(b)(3) is met.

4.   Conclusion

The motion by Defendants to exclude the expert rebuttal report of Bjorn I. Steinholt is DENIED. Dkt 111.

The motion by lead Plaintiff Norfolk County Group to strike the Defendants' motion to exclude is DENIED AS MOOT. Dkt 113.

The Court FINDS that Norfolk County Group has established each of the necessary requirements of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

The motion by Norfolk County Group for class certification is GRANTED. Dkt 86.

The following class is CERTIFIED pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All persons and entities that purchased or acquired the common stock of Anadarko Petroleum Corporation between February 20, 2015, and May 2, 2017, inclusive, and were damaged thereby. Excluded from the Class are Defendants and their families, legal representatives, heirs, successors, or assigns; officers, directors, subsidiaries, and affiliates of Anadarko during the Class Period; any entity in which Defendants have a controlling interest; and any judicial officer to which this litigation is assigned.

SO ORDERED.

Signed on September 28, 2022, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge

15

# Exhibit B

United States District Court
Southern District of Texas
**ENTERED**
June 30, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|                              |   |                          |
|------------------------------|---|--------------------------|
|                              | § | CIVIL ACTION NO          |
|                              | § | 4:20-cv-00576            |
|                              | § |                          |
|                              | § |                          |
| IN RE: ANADARKO              | § | JUDGE CHARLES ESKRIDGE   |
| PETROLEUM                    | § |                          |
| CORPORATION                  | § |                          |
| SECURITIES                   | § |                          |
| LITIGATION                   | § |                          |
|                              | § |                          |
|                              | § |                          |

## ORDER DENYING MOTION FOR RECONSIDERATION

Anadarko seeks reconsideration under Rule 54(b) of the Federal Rules of Civil Procedure of the order granting class certification, largely for reasons "put forward in Defendants' Class Certification Opposition or *Daubert* briefing, and Dr Ferrell's accompanying reports." Dkt 143 at 7. The motion is denied. Dkt 143.

Under Rule 54(b), the district court may reconsider and revise its decision for any reason deemed sufficient, and this is so even in the absence of new evidence or an intervening change in or clarification of the substantive law. *Austin v Kroger Texas, LP*, 864 F3d 326, 336 (5th Cir 2017) (citations omitted). Such approach reflects the "inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." Id at 337, quoting *Cobell v Jewell*, 802 F3d 12, 25–26 (DC Cir 2015). But there are limits. The Fifth Circuit admonishes, "A motion for reconsideration may not be used to rehash rejected arguments or introduce new arguments." *LeClerc v Webb*, 419 F3d 405, 412 n 13 (5th

Cir 2005); see also *Contango Operators, Inc v United States*, 965 F Supp 2d 791, 800 (SD Tex 2013): "Where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."

Lead Plaintiff Norfolk County Council as Administering Authority of the Norfolk Pension Fund, Iron Workers Local #580 Joint Funds moved for class certification in October 2021. Dkt 86. In February 2022, Defendant Anadarko Petroleum Corporation moved to file a surreply, which was denied. Dkt 110. Anadarko also later filed a motion to exclude the report and rebuttal report of Bjorn Steinholt on *Daubert* grounds. Dkt 111 at 5; see also Dkts 86-1 (Steinholt report) & 96-1 (Steinholt rebuttal report). That motion was also denied, with statement that the motion to exclude was "little more than an attempt to reurge Defendants' recently denied motion for leave to file a surreply," and that "class certification will rise or fall with what is fairly briefed in the papers under the Local Rules of the Southern District." Dkt 141 at 4. Based on the briefing, the class was certified. Id at 14–15.

Most of the arguments raised on motion for reconsideration were addressed in the order and present nothing new for consideration. This includes arguments that the Court (i) wrongly rejected an argument that the Shen news had no impact on ConocoPhillips share price because the news was only partially disclosed, (ii) wrongly concluded that ConocoPhillips was not a proper comparator to Anadarko, (iii) relied upon an incorrect timeline of events, and (iv) incorrectly relied on Bjorn Steinholt's event study as to the statistical significance of the price drop on May 3rd. Dkt 143 at 8–12. Many of these arguments derive from information presented in the *Daubert* briefing, with express determination that such would *not* be properly considered. And as such, they will not be considered here.

To the extent Anadarko now argues that Cobalt isn't a proper comparator to Anadarko, this was disregarded as

being raised only in a footnote. Dkt 143 at 10; cf Dkt 93 at n3; see Section 18(d) of this Court's Procedures. To the extent it also argues that after-market trading wasn't efficient, this wasn't raised in its prior response and won't be considered now. Dkt 143 at 10–12; cf Dkts 93 (not raised in response) & 111 (raised as to *Daubert* challenge).

One factual contention does warrant clarification. The class certification order concluded that ConocoPhillips wasn't a proper comparator because "the Shen project was a minor expenditure relative to its massive market cap," and its "$101 million stake paled in comparison to the $902 million stake held by Anadarko." Dkt 141 at 10. Anadarko argues this as error because "Anadarko and ConocoPhillips had nearly identical stakes in Shen: 30% for ConocoPhillips and 33% for Anadarko," and their "sunk costs—i.e., costs that are already committed and cannot be recovered—do not reflect their ownership stakes in the project." It further asserts that "it was wrong for the Court to consider ConocoPhillips' $101 million dry hole expense to represent ConocoPhillips' entire expenditure on the project" because it only represents the write-off expenses related to Shen-6. Dkt 143 at 9–10.

To be more precise on the point at issue, ConocoPhillips and Anadarko were differently situated given their respective market capitalizations. ConocoPhillips experienced a $101 million dry-hole expense, which represented 0.2% of its market capitalization, while Anadarko experienced a $902 million write-off, which represented 2.9% of its market capitalization. Dkt 96-1 at 15–16. The fact that the two companies had similar stakes in Shen doesn't alter the conclusion that the Shen project was a minor expenditure for ConocoPhillips due to its massive market cap. This means that it was properly concluded that ConocoPhillips isn't a proper comparator to Anadarko.

The motion to reconsider the order granting class certification is DENIED. Dkt 143.

So ordered.

Signed on June 30, 2023, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge

# Exhibit C

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JOHN V. FERRIS, et al.,

    Plaintiffs

v.

WYNN RESORTS LIMITED, et al.,

    Defendants

Case No.: 2:18-cv-00479-APG-DJA

**Order Granting Motions to Take Deposition and for Leave to File Surreply**

[ECF Nos. 271, 272]

    I ORDER that the defendants' motions to take a deposition and for leave to file a surreply **(ECF Nos. 271, 272) are GRANTED.**  The defendants may take a four-hour deposition of the plaintiff's expert, Zachary Nye.  The deposition is limited to the opinions expressed in Nye's reply report.  That deposition must be completed by **February 7, 2023**.  The defendants may file a surreply of no more than 12 pages.  The surreply is limited to the price impact issues for which the defendants bear the burden of proof under *Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System*, 141 S. Ct. 1951, 1963 (2021).  The surreply is due **February 17, 2023**.  The defendants may not submit a rebuttal or supplemental expert report in support of their surreply.

    No extensions of these deadlines and no further briefing on the class certification motion will be granted absent extraordinary circumstances.

    DATED this 13th day of January, 2023.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

# Exhibit D

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| In re BP p.l.c. Securities Litigation | MDL No. 2185 |
| | Civil Action No. 4:10-md-02185 |
| | Hon. Keith P. Ellison |

## __ORDER__

UNDER SUBMISSION this day was the Motion for Leave to File Sur-Reply in Further Opposition to Plaintiffs' Motion for Class Certification filed by Defendants BP p.l.c., BP America, Inc. and BP Exploration and Production, Inc. and Individual Defendants Anthony B. Hayward and Douglas Suttles (collectively, "Defendants"). Upon considering Defendants' motion, the Court is of the opinion that the Defendants' motion should be and hereby is:

GRANTED in all respects.

Signed this 8th day of November 2013.

_____
Hon. Keith P. Ellison
UNITED STATES DISTRICT JUDGE